(Slip Opinion) OCTOBER TERM, 2020 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SANCHEZ ET UX. *v.* MAYORKAS, SECRETARY OF HOMELAND SECURITY, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 20–315. Argued April 19, 2021—Decided June 7, 2021

Petitioner Jose Santos Sanchez is a citizen of El Salvador who challenges the denial of his application to become a lawful permanent resident (LPR) of the United States. Sanchez entered the United States unlawfully in 1997. In 2001, the Government granted him Temporary Protected Status (TPS). The TPS program allows foreign nationals of a country designated by the Government as having unusually bad or dangerous conditions to live and work in the United States while the conditions last. See §1254a. In 2014, Sanchez applied under §1255 of the immigration laws to obtain LPR status. Section 1255 provides a way for a "nonimmigrant"—a foreign national lawfully present in this country on a temporary basis—to obtain an "[a]djustment of status" to LPR. 8 U. S. C. §1255. The United States Citizenship and Immigration Services determined Sanchez ineligible for LPR status because he entered the United States unlawfully. Sanchez successfully challenged that decision before the District Court, which reasoned that Sanchez's TPS required treating him as if he had been lawfully admitted to the country for purposes of his LPR application. The Third Circuit reversed, finding Sanchez's unlawful entry into the country precluded his eligibility for LPR status under §1255, notwithstanding his TPS.

*Held*: A TPS recipient who entered the United States unlawfully is not eligible under §1255 for LPR status merely by dint of his TPS. Section 1255 provides that eligibility for LPR status generally requires an "admission" into the country— defined to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." §1101(a)(13)(A). Sanchez did not enter lawfully.

Syllabus

And his TPS does not eliminate the effect of that unlawful entry. Section 1254a(f)(4) provides that a TPS recipient who applies for permanent residency will be treated as having nonimmigrant status—the status traditionally and generally needed to invoke the LPR process under §1255. But that provision does not aid the TPS recipient in meeting §1255's separate admission requirement. Lawful status and admission are distinct concepts in immigration law, and establishing the former does not establish the latter. Sanchez resists this conclusion, arguing that the statute's directive that a TPS recipient "shall be considered . . . as a nonimmigrant" for purposes of §1255 means he must also be considered as admitted. But the immigration laws nowhere state that admission is a prerequisite of nonimmigrant status. So there is no reason to interpret the TPS provision's conferral of nonimmigrant status as including a conferral of admission. In fact, contrary to Sanchez's position, there are immigration categories in which individuals have nonimmigrant status without admission. See, *e.g.*, §§1101(a)(10), 1101(a)(15)(U), 1182(d)(14). Thus, when Congress confers nonimmigrant status for purposes of §1255, but says nothing about admission, the Court has no basis for ruling an unlawful entrant eligible to become an LPR. Pp. 4–9.

967 F. 3d 242, affirmed.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–315

_____

## JOSE SANTOS SANCHEZ, ET UX., PETITIONERS *v.* ALEJANDRO N. MAYORKAS, SECRETARY OF HOMELAND SECURITY, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[June 7, 2021]

JUSTICE KAGAN delivered the opinion of the Court.

Petitioner Jose Santos Sanchez entered this country unlawfully from El Salvador. Years later, because of unsafe living conditions in that country, the Government granted him Temporary Protected Status (TPS), entitling him to stay and work in the United States for as long as those conditions persist. Sanchez now wishes to become a lawful permanent resident (LPR) of the United States. The question here is whether the conferral of TPS enables him to obtain LPR status despite his unlawful entry. We hold that it does not.

I

Section 1255 of the immigration laws provides a way for a "nonimmigrant"—a foreign national lawfully present in this country on a designated, temporary basis—to obtain an "[a]djustment of status" making him an LPR. 8 U. S. C. §1255 (boldface deleted); see §1101(a)(15) (listing classes of nonimmigrants, such as students and tourists). Under that section, a nonimmigrant's eligibility for such an adjustment to permanent status depends (with exceptions not relevant

here) on an "admission" into this country. And an "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." §1101(a)(13)(A). The admission—or, to use the definitional phrase, "lawful entry"—requirement appears in two pertinent provisions of §1255. One states that a nonimmigrant may become an LPR only if he has been "inspected and admitted or paroled into the United States." §1255(a). And another states that a nonimmigrant who has previously worked without authorization in the United States may become an LPR only if his presence here is "pursuant to a lawful admission." §1255(k)(1); see §1255(c)(2).[1]

A separate provision of immigration law establishes the TPS program, which provides humanitarian relief to foreign nationals in the United States who come from specified countries. See §1254a. The Government may designate a country for the program when it is beset by especially bad or dangerous conditions, such as arise from natural disasters or armed conflicts. The country's citizens, if already present in the United States, may then obtain TPS. That status protects them from removal and authorizes them to work here for as long as the TPS designation lasts. A person's unlawful entry into the United States will usually not preclude granting him TPS. See §1254a(c)(2)(A)(ii); 8 CFR §244.3 (2020). And relevant here, the TPS provision states: "[F]or purposes of adjustment of status under section 1255," a person given TPS "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." §1254a(f)(4).

––––––––––

[1] Section 1255(k)'s requirement of a lawful admission, unlike §1255(a)'s, applies even if the nonimmigrant has been paroled into the United States—that is, received temporary permission to enter the country "for urgent humanitarian reasons or significant public benefit." 8 U. S. C. §1182(d)(5)(A). So a nonimmigrant who has worked without authorization cannot rely on his parolee status (if any) to become an LPR.

Jose Santos Sanchez is a citizen of El Salvador who has lived in the United States for more than two decades. He entered this country unlawfully in 1997—without "inspection and authorization by an immigration officer." §1101(a)(13)(A). Once here, he worked without legal authorization. In 2001, the Government designated El Salvador under the TPS program after a series of devastating earthquakes. Sanchez obtained TPS that year, and has held it ever since. In 2014, he applied under §1255 for an adjustment to LPR status.[2]

The United States Citizenship and Immigration Services denied Sanchez's LPR application. Under §1255, the agency stated, Sanchez was ineligible for LPR status because he had not been lawfully admitted to the United States. See App. to Pet. for Cert. 40a. And in the agency's view, his TPS provided no way around that bar. "Recipients of TPS," the agency reasoned, "must still meet the threshold requirement" of a lawful entry. *Id.,* at 46a. Or said otherwise: "A grant of TPS does not cure a foreign national's entry without inspection or constitute an inspection and admission of the foreign national," as demanded by §1255. *Ibid.*

Sanchez challenged the decision. The District Court granted summary judgment in his favor, relying on the statutory mandate that a TPS recipient "shall be considered as" having "lawful status as a nonimmigrant" for purposes of applying to become an LPR. See *Santos Sanchez* v. *Johnson*, 2018 WL 6427894, *4 (D NJ, Dec. 7, 2018) (citing §1254a(f)(4); emphasis deleted). According to the court, that provision requires treating TPS recipients "as though [they] had been 'inspected and admitted.'" *Ibid.* But the Court of Appeals for the Third Circuit reversed, holding

_____

[2] Sonia Gonzalez, Sanchez's wife, is also a petitioner here. She claims LPR status derivatively, under a provision "entitl[ing her] to the same status" as her husband. §1153(d). We therefore focus on her husband's application.

that "a grant of TPS does not constitute an 'admission' into the United States." *Sanchez* v. *Secretary U. S. Dept. of Homeland Security*, 967 F. 3d 242, 252 (2020). The court observed that "admission" and "status" are separate concepts in immigration law. *Id.,* at 246. So, the court concluded, providing a person with nonimmigrant status (as the TPS provision does) does not mean admitting him (as §1255 requires). See *ibid.*

We granted certiorari, 592 U. S. ___ (2021), to resolve a Circuit split over whether a TPS recipient who entered the country unlawfully can still become an LPR.[3] We now affirm the Third Circuit's decision that he cannot. The TPS program gives foreign nationals nonimmigrant status, but it does not admit them. So the conferral of TPS does not make an unlawful entrant (like Sanchez) eligible under §1255 for adjustment to LPR status.

## II

Section 1255, applied according to its plain terms, prevents Sanchez from becoming an LPR. There is no dispute that Sanchez "entered the United States in the late 1990s unlawfully, without inspection." Brief for Petitioners 13. But as earlier described, §1255 requires an LPR applicant like Sanchez to have entered the country "lawful[ly]," with "inspection"—that is, to have been admitted. §1101(a)(13)(A); see *supra,* at 1–2. Indeed, §1255 imposes an admission requirement twice over. Its principal provision states that an applicant for LPR status must have been "inspected and admitted or paroled into the United States."

---

[3] Compare *Sanchez* v. *Secretary U. S. Dept. of Homeland Security*, 967 F. 3d 242, 245 (CA3 2020) (case below) (holding that such a person cannot do so); *Nolasco* v. *Crockett*, 978 F. 3d 955, 959 (CA5 2020) (same); *Serrano* v. *United States Atty. Gen.*, 655 F. 3d 1260, 1265–1266 (CA11 2011) (*per curiam*) (same), with *Velasquez* v. *Barr*, 979 F. 3d 572, 578 (CA8 2020) (holding that he can); *Ramirez* v. *Brown*, 852 F. 3d 954, 958 (CA9 2017) (same); *Flores* v. *United States Citizenship and Immigration Servs.*, 718 F. 3d 548, 553–554 (CA6 2013).

§1255(a). And another provision says that a person who has worked without authorization in the country—as Sanchez did for several years—may become an LPR only if his presence in the United States is "pursuant to a lawful admission." §1255(k). Sanchez has never claimed that he can, without aid from the TPS provision, satisfy those demands for admission.[4] A straightforward application of §1255 thus supports the Government's decision to deny him LPR status.

And nothing in the conferral of TPS changes that result. As noted earlier, a TPS recipient is "considered as being in, and maintaining, lawful status as a nonimmigrant" for the purpose of becoming an LPR. §1254a(f)(4); see *supra,* at 2. That provision ensures that, in applying for permanent residency, a TPS recipient will be treated as having nonimmigrant status—even if, like Sanchez, he really does not. See §1101(a)(15) (not including TPS recipients among the designated classes of "nonimmigrants"). It thus guarantees that every TPS recipient has the status traditionally and generally needed to invoke §1255's adjustment process. See §1255 (titled "[a]djustment of status of nonimmigrant to that of person admitted for permanent residence" (boldface deleted)). But the provision does not aid the TPS recipient in meeting §1255's independent legal-entry requirement. Lawful status and admission, as the court below recognized, are distinct concepts in immigration law: Establishing one does not necessarily establish the other. See *supra,* at 3–4. On the one hand, a foreign national can be admitted

_____

[4] The Government notes that Sanchez was treated as "paroled" when he returned from an authorized trip abroad after obtaining TPS. See Brief for Respondents 15, n. 5. But Sanchez has never claimed that this treatment made him eligible to adjust to LPR status under §1255(a). That is probably because the argument could not have mattered: §1255(k) stands as an independent prohibition on his invoking the LPR process. See *supra,* at 2, n. 1. We express no view on whether a parole of the kind Sanchez received enables a TPS recipient to become an LPR absent any other bar in §1255.

but not in lawful status—think of someone who legally entered the United States on a student visa, but stayed in the country long past graduation. On the other hand, a foreign national can be in lawful status but not admitted—think of someone who entered the country unlawfully, but then received asylum. The latter is the situation Sanchez is in, except that he received a different kind of lawful status. The TPS statute permits him to remain in the country; and it deems him in nonimmigrant status for purposes of applying to become an LPR. But the statute does not constructively "admit" a TPS recipient—that is, "consider[]" him as having entered the country "after inspection and authorization." §1254a(f)(4); §1101(a)(13)(A). And because a grant of TPS does not come with a ticket of admission, it does not eliminate the disqualifying effect of an unlawful entry.

Sanchez resists this conclusion by asserting an "indissoluble relationship between admission and *nonimmigrant* status." Reply Brief 2 (emphasis in original). While conceding that some forms of status (*e.g.,* asylum) do not require admission, Sanchez contends that nonimmigrant status always does: "One cannot obtain lawful nonimmigrant status without admission." *Ibid.* In support of that claim, Sanchez points to §1184 of the immigration laws, entitled "[a]dmission of nonimmigrants." And he asserts that it is impossible to "identif[y] any category of individuals who are lawful nonimmigrants but are not admitted—because no such category exists." Brief for Petitioners 20. So (Sanchez concludes) when the law provides that a TPS recipient shall be "considered . . . as a nonimmigrant" for purposes of §1255, it is necessarily saying that he shall also be considered as admitted.

But to begin with, §1184 does not (as Sanchez contends) require admission for nonimmigrant status. That provision states that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the [Secretary of Homeland Security]

may by regulations prescribe." §1184(a)(1). The section also provides that a foreign national is "presumed to be an immigrant until" he establishes "at the time of application for admission" that "he is entitled to a nonimmigrant status." §1184(b). Section 1184 thus regulates the process for admitting foreign nationals as nonimmigrants. Suppose a foreign national wants to be admitted to the United States as a university student—a kind of nonimmigrant. He should look to §1184 (among other provisions) to find out what that will entail—what he must show and what that showing will entitle him to. Why, though, does that matter? No one denies that most foreign nationals obtain nonimmigrant status through an admission. So there is naturally a section in the immigration laws that specifies how that process works. But nothing in §1184 (or any other section) states that admission is a prerequisite of nonimmigrant status—or otherwise said, that the former is a necessary incident of the latter. And that is what Sanchez needs. For without such an "indissoluble" link, Reply Brief 2, there is no reason to view the TPS provision's conferral of nonimmigrant status as also a conferral of admission.

In fact, individuals in two immigration categories have what Sanchez says does not exist: nonimmigrant status without admission. The first category is for "alien crewmen"—foreign nationals who serve on board a vessel or aircraft. §1101(a)(10). They receive nonimmigrant status when their vessel or aircraft "land[s]" in the United States. §1101(a)(15)(D)(i). But still the law provides that they are not "considered to have been admitted." §1101(a)(13)(B). The second category is for foreign nationals who have been the victim of a serious crime in the United States and can assist with the investigation. Those individuals may receive nonimmigrant status even if they entered the country unlawfully—so even if they were not admitted. See §§1101(a)(15)(U), 1182(d)(14). And §1255 specifically recognizes that possibility. That section makes these so-called

"U" nonimmigrants eligible for LPR status if they were *either* "admitted into the United States" *or* "otherwise provided nonimmigrant status." §1255(m)(1). There could scarcely be a plainer statement of the daylight between nonimmigrant status and admission (except maybe for the alien crewmen provision). And that plain statement comes in a provision expressly enabling some unlawful entrants to adjust to LPR status. So when Congress does not speak in that manner—when it confers status, but says nothing about admission, for purposes of §1255—we have no basis for ruling an unlawful entrant eligible to become an LPR.

Sanchez objects that if the TPS provision confers only nonimmigrant status for §1255, it accomplishes precious little. See Reply Brief 11–13; Tr. of Oral Arg. 27. Less than he would like, of course: It would not make him, or other TPS recipients who entered the country unlawfully, LPR-eligible. But some TPS recipients will benefit from the TPS provision's conferral of nonimmigrant status for purposes of §1255. Recall that the provision gives all TPS recipients the status typically required to invoke §1255—that is, nonimmigrant status. See *supra,* at 5. Some TPS recipients need exactly that assistance—without needing a constructive admission. Consider, for example, a foreign national who entered the country legally on a tourist visa, but stayed on for several months after the visa's expiration. He can satisfy §1255's requirement of admission, but he founders in showing nonimmigrant status. The TPS provision relieves that difficulty and enables him to become an LPR. Congress, of course, could have gone further, by deeming TPS recipients to have not only nonimmigrant status but also a lawful admission. Legislation pending in Congress would do just that. See American Dream and Promise Act of 2021, H. R. 6, 117th Cong., 1st Sess., §203, p. 29 (introduced Mar. 3, 2021) (amending §1254a(f)(4) so that a TPS recipient shall be considered "*as having been inspected and*

*admitted into the United States, and*" as being in, and maintaining, lawful status as a nonimmigrant" (emphasis added)). But even without that amendment, the statute does something—and this Court does not get to say that the something it does is not enough.

### III

Section 1255 generally requires a lawful admission before a person can obtain LPR status. Sanchez was not lawfully admitted, and his TPS does not alter that fact. He therefore cannot become a permanent resident of this country. We affirm the judgment below.

*It is so ordered.*