**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE ALBERTO HERNANDEZ,<br>*Petitioner*,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br>*Respondent.* | No. 21-70493<br><br>Agency No.<br>A094-447-896<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 9, 2021
Pasadena, California

Filed June 28, 2022

Before: Paul J. Kelly, Jr.,[*] Milan D. Smith, Jr., and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Forrest

---

[*] The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[**]

**Immigration**

Denying Jose Alberto Hernandez's petition for review of a decision of the Board of Immigration Appeals, the panel held that: (1) Hernandez's receipt of temporary protected status ("TPS") was not an admission, and he therefore could not meet the statutory requirement that he have seven years of continuous residence in the United States after admission for purposes of lawful permanent resident cancellation of removal; and 2) the Board properly concluded that Hernandez's domestic-violence conviction was a particularly serious crime ("PSC") that barred him from obtaining asylum.

Considering the Supreme Court's recent decision in *Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021), and the plain language of the TPS statute, 8 U.S.C. § 1254a(c)(5), the panel concluded that the granting of TPS does not constitute being "admitted in any status" under the cancellation statute, 8 U.S.C. § 1229b(a). The panel held that *Sanchez* effectively overruled circuit precedent requiring consideration of the benefits conferred by an alien's immigration status in determining whether the alien had been admitted. The panel explained that circuit precedent judicially expanding the statutory definition of admission was clearly irreconcilable with *Sanchez*'s holding that lawful status and admission are distinct concepts in immigration law. The panel wrote that *Sanchez* is clear that TPS does not constitute an admission to the United States no matter how great its benefits.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel wrote that the plain language of the TPS statute reinforced its conclusion that receiving TPS does not constitute an admission under the cancellation statute. Most compelling is the statute's express statement that a grant of TPS does not constitute an admission. Moreover, certain other language indicates that TPS is a disfavored way to establish any of the cancellation-of-removal requirements, and notably absent from the statute's list of benefits is admission. Accordingly, the panel agreed with the BIA that Hernandez failed to satisfy the 7-year continuous residence requirement after having been admitted in any status, and he was therefore not eligible for lawful permanent resident cancellation of removal.

The panel rejected Hernandez's argument that the BIA legally erred in its PSC determination by considering the cumulative effect of his three domestic-violence convictions, instead of considering his third conviction in 2016 alone. The panel concluded that the BIA's specific references to Hernandez's third domestic-violence conviction made clear that it did not hold that all three convictions, considered collectively, constituted a particularly serious crime. Rather, the agency held only that the third conviction was particularly serious in light of the previous convictions. The panel concluded that it need not address whether the BIA properly considered Hernandez's prior convictions in deciding that his third conviction was particularly serious because Hernandez did not "specifically and distinctly" argue that this was error in his opening brief, and thus forfeited the issue.

## COUNSEL

Niels W. Frenzen (argued) and Jean E. Reisz, University of Southern California, Gould School of Law, Immigration Clinic, Los Angeles, California, for Petitioner.

Lindsay Corliss (argued), Trial Attorney; Brianne Whelan Cohen, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

FORREST, Circuit Judge:

The Board of Immigration Appeals (BIA) denied Petitioner Jose Alberto Hernandez cancellation of removal concluding that his receipt of temporary protected status (TPS) was not an admission and, therefore, he could not meet the statutory requirement that he have seven years of continuous residence in the United States after admission. The BIA also denied Hernandez's application for asylum concluding that his 2016 domestic-violence conviction was a "particularly serious crime" that barred him from relief. Hernandez challenges the BIA's decision raising two primary arguments: (1) under our precedent, his TPS does constitute an admission "in any status" under the cancellation statute, 8 U.S.C. § 1229b(a), and (2) the BIA applied an improper legal standard in deciding that his 2016 conviction was for a particularly serious crime.

We reject both arguments. In doing so, we hold that the Supreme Court's recent decision in *Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021), effectively overruled our precedent

requiring that the benefits conferred by an alien's immigration status be analyzed to determine if the alien had been "admitted in any status," *see Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), and we conclude that under *Sanchez* and the plain language of the relevant immigration statutes, Hernandez's TPS does not constitute an admission under 8 U.S.C. § 1229b(a)(2). We also conclude that the BIA did not err in classifying his 2016 domestic-violence conviction as a particularly serious crime that bars him from obtaining asylum.

## I.  BACKGROUND

Hernandez, a native and citizen of El Salvador, entered the United States unlawfully in 1999. The Government granted him TPS in 2003. The TPS program "provides humanitarian relief to foreign nationals in the United States who come from specified countries." *Sanchez*, 141 S. Ct. at 1812; 8 U.S.C. § 1254a(b). The Government may designate a country for protection if the country suffers from dangerous conditions arising from armed conflicts or natural disasters. 8 U.S.C. § 1254a(b). Citizens of the designated country who are already present in the United States may then obtain TPS. *Id*. § 1254a(c)(1). TPS protects aliens from removal for the duration of their country's designation and allows them to work in the United States. *Id*. § 1254a(a). An alien's unlawful entry generally does not preclude them from being granted TPS. *Id.* § 1254a(c)(2)(A)(ii).

In 2010, approximately seven years after Hernandez received TPS, the Government admitted him into the United States as a lawful permanent resident. Hernandez was convicted of multiple crimes after becoming a lawful permanent resident. He was convicted in 2014, 2015, and 2016 of "domestic violence with injury" under California Penal Code § 273.5(A) and sentenced to increasingly longer

terms of imprisonment for each offense—four days, 30 days, and 364 days, respectively. The victim in all three cases was Hernandez's now ex-wife. Hernandez also was convicted of taking a vehicle without the owner's permission, California Vehicle Code § 10851A, and receiving or purchasing stolen property, California Penal Code § 496d(a). For his receiving-stolen-property conviction, he was sentenced to 16 months' imprisonment and served 200 days.

In August 2016, the Government charged Hernandez as removable based on his 2016 domestic-violence conviction, which was based on acts committed approximately five years after Hernandez became a lawful permanent resident. Hernandez conceded removability and sought cancellation of removal under 8 U.S.C. § 1229b(a) (LPR cancellation) and asylum. In 2017, the BIA denied his applications for relief based on his receiving-stolen-property conviction, not his 2016 domestic-violence conviction, and ordered him removed. But two years after Hernandez sought review of the BIA's decision, the California Superior Court vacated his receiving-stolen-property conviction upon which the BIA had based its denial of relief, and we granted the Government's unopposed motion to remand to the BIA.

On remand, the BIA returned the case to an Immigration Judge (IJ) for an analysis of how the vacatur of Hernandez's conviction affected his eligibility for LPR cancellation and asylum.[1] At a hearing, the IJ assumed without deciding that

---

[1] In its remand order to the IJ, the BIA noted that it did not construe our remand order to "disturb[] [its] prior determination that [Hernandez] did not meet his burden of proving eligibility on the merits of his applications" for withholding of removal or CAT protection. Accordingly, Hernandez's eligibility for those forms of relief is not at issue here.

Hernandez's vacated[2] receiving-stolen-property conviction did not bar him from either form of relief. Hernandez confirmed that the Government admitted him as a lawful permanent resident on April 29, 2010. Although he was charged with removability for acts committed only five years later, Hernandez argued that he had nonetheless established the required seven years of continuous residence based on his 2003 grant of TPS. Because the Government argued that his 2016 domestic-violence conviction was a particularly serious crime that barred him from receiving asylum, Hernandez's testimony about his convictions focused on his domestic-violence convictions.

The IJ denied Hernandez's application for LPR cancellation concluding that Hernandez failed "to show seven years of continuous residence in the United States after having been admitted in any status." The BIA rejected Hernandez's argument that, under our precedent, receiving TPS is a grant of admission. Instead, the IJ found that Hernandez was admitted to the United States in April 2010, when he became a lawful permanent resident. The IJ also found that Hernandez stopped accruing continuous residency five years later—two years short of the requirement—when he committed the assault for which he was convicted in 2016.

Regarding Hernandez's application for asylum, the IJ concluded that Hernandez was ineligible for this relief because his 2016 domestic-violence conviction was a

---

[2] The California Superior Court vacated Hernandez's receiving-stolen-property conviction under a statute that requires that the movant have already finished serving his sentence. *See* Cal. Penal Code § 1473.7. On remand, the IJ did not determine whether the evidence established that the vacatur constituted a complete vacatur for immigration purposes.

particularly serious crime. The IJ concluded that Hernandez's own testimony established this fact— Hernandez acknowledged that he was convicted of hitting his ex-wife in the face after two prior incidents where he became angry and hit her and rejected Hernandez's attempts to minimize the severity of the conduct and harm underlying his 2016 conviction. The IJ also considered the length of Hernandez's sentence for his 2016 conviction, which was one day short of this conviction being an aggravated felony and nondiscretionary particularly serious crime. *See* 8 U.S.C. §§ 1158(b)(2)(B)(i) (defining an aggravated felony as a "particularly serious crime"), 1101(a)(43)(F) (defining an aggravated felony for immigration purposes as a crime of violence for which the term of imprisonment is at least 365 days).

The BIA dismissed Hernandez's appeal. It agreed with the IJ that Hernandez was not eligible for LPR cancellation because he had not shown seven years of continuous residence after admission. The BIA also found that a grant of TPS did not qualify as being "admitted in any status." In addition, the BIA rejected Hernandez's challenge to his 2016 domestic-violence conviction being classified as a particularly serious crime. The BIA found that the IJ properly considered the nature of Hernandez's crime, an assault committed with physical force, and the length of his sentence. The BIA also concluded that it was "significant" that Hernandez continued to engage in abusive behavior after his first two domestic-violence convictions and that "[t]hese circumstances . . . were properly considered in[] the overall assessment of whether [Hernandez's] third conviction for domestic violence in a little over a year was 'particularly serious.'"

## II.  DISCUSSION

"[W]e review de novo the BIA's determinations of questions of law and its legal conclusions." *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012). If the BIA's decision "adopts or relies on the IJ's reasoning," we review both decisions; otherwise, we review only the BIA's. *Alanniz v. Barr*, 924 F.3d 1061, 1065 (9th Cir. 2019). Where, as here, the BIA's decision was not published or "directly controlled by a published decision," we review issues of statutory construction de novo and give no deference to the BIA's decision. *Eleri v. Sessions*, 852 F.3d 879, 884 (9th Cir. 2017) (citation omitted); *Route v. Garland*, 996 F.3d 968, 975 (9th Cir. 2021). We review for abuse of discretion whether the BIA "relied on the appropriate factors and proper evidence" to reach its determination that an alien committed a "particularly serious crime." *Bare v. Barr*, 975 F.3d 952, 961 (9th Cir. 2020) (internal quotation marks, alterations, and citation omitted).

### A.  Cancellation of Removal

To be eligible for LPR cancellation, an alien must establish that he "has resided in the United States continuously for 7 years after having been *admitted in any status*." 8 U.S.C. § 1229b(a)(2) (emphasis added); *see Alanniz*, 924 F.3d at 1065. "Admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1182–83 (9th Cir. 2021); *see also In re Reza-Murillo*, 25 I. & N. Dec. 296, 297 (BIA 2010) (citing § 1101(a)(13)(A) for the definition of "admitted"). This definition, however, does not cover circumstances like Hernandez's where an alien enters the United States without inspection and is later admitted to the United States based on

a "post-entry adjustment of status." *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051 (9th Cir. 2014); *see Alanniz*, 924 F.3d at 1069–70 (noting that a person who enters the United States without inspection is subsequently admitted to the United States when he or she becomes a lawful permanent resident).

Relying on our now-withdrawn opinion in *Enriquez v. Barr*, 969 F.3d 1057 (9th Cir. 2020), *withdrawn on denial of reh'g en banc sub nom. Enriquez v. Barr*, 988 F.3d 1210 (9th Cir. 2021), Hernandez assumes without analysis that the language in the cancellation of removal and TPS statutes is ambiguous, and he argues that, if an admission as defined in Section 1101(a)(13)(A) has not occurred, then we must analyze the benefits conferred by his TPS and determine if applying the statutory definition of admission produces absurd results or if other compelling reasons mandate a judicial expansion of the statutory definition of admission. This analysis requires comparing TPS benefits to benefits conferred by other statuses that we have (or have not) held constitute an admission. Hernandez argues that the Supreme Court's recent decision in *Sanchez* does not control here because it analyzed a different issue—whether TPS constituted an admission for the purposes of an adjustment of status to lawful permanent resident under 8 U.S.C. § 1255, not LPR cancellation under Section 1229b(a). *See Sanchez*, 141 S. Ct. at 1811.

## 1. Ninth Circuit Precedent

In *Garcia-Quintero v. Gonzales*, we judicially expanded the definition of "admission" in certain, narrow circumstances. 455 F.3d 1006, 1016 (9th Cir. 2006), *abrogated by Medina-Nunez v. Lynch*, 788 F.3d 1103, 1105 (9th Cir. 2015). Based on the benefits conferred by the Family Unity Program (FUP), we concluded that

Section 1101(a)(13)(A)'s definition of admission does not always control and that FUP recipients should be deemed admitted under Section 1229b(a)(2). *Id.* at 1015, 1020. Four years later, however, the BIA rejected *Garcia-Quintero*, holding in *In Re Reza-Murillo* that the statutory definition of admission controls whether acceptance into the FUP constitutes an admission for cancellation-of-removal purposes. 25 I. & N. Dec. 296, 297–300 (BIA 2010). We accepted the BIA's narrower reading of "admitted in any status" as reasonable, explaining:

> We also have no trouble concluding that the BIA's decision in *In re Reza-Murillo* is "otherwise entitled to *Chevron* deference." [*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("*Brand X*").] It is reasonable for the BIA to apply the statutory definition of the term "admitted." Nothing in the statutory text, the BIA's cases, or our own cases precludes the BIA from relying on that definition.
>
> Pursuant to *Brand X*, we must afford *Chevron* deference to the BIA's decision in *In re Reza-Murillo* holding that acceptance into the Family Unity Program does not constitute an admission for purposes of § 1229b(a)(2). The BIA therefore correctly denied Petitioner's application for cancellation of removal.

*Medina-Nunez,* 788 F.3d at 1105–06.

The year after our decision in *Medina-Nunez*, we held in *Fuentes v. Lynch* that aliens "listed as derivative beneficiaries on a parent's asylum and [Nicaraguan

Adjustment and Central American Relief Act] applications and who have been afforded authorization to work in the United States" are not "admitted in any status." 837 F.3d 966, 968 (9th Cir. 2016). We noted, however, that *In re Reza-Murillo* left open the possibility that individuals could be considered "'admitted in any status' notwithstanding their lack of admission" under Section 1101(a)(13)(A) if there are "compelling reasons" to depart from the statutory definition. *Id*. Although our precedent does not identify what constitutes a compelling reason to judicially expand Section 1101(a)(13)(A)'s definition of admission, we have generally adopted the approach that such reasons exist only when the benefits that the status at issue confers are more generous than those granted to those with FUP status. *See, e.g.*, *Alanniz*, 924 F.3d at 1066–67 (holding that an alien's parole did not qualify as admission because acceptance into the FUP, which is a specialized form of parole, did not qualify).

## 2.  *Sanchez v. Mayorkas*

In *Sanchez*, the Supreme Court considered whether conferral of TPS constituted an admission to the United States for purposes of obtaining lawful permanent resident status and concluded that it did not. 141 S. Ct. at 1811. Applying a plain language analysis, the Court concluded that "[l]awful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other." *Id.* at 1813. Accordingly, the Court held that "because a grant of TPS does not come with a ticket of admission, it does not eliminate the disqualifying effect of an unlawful entry." *Id*. at 1813–14.

The Court rejected the argument that without providing admission, TPS "accomplishes precious little" and listed the benefits that an alien gains from nonimmigrant status. *Id*.

at 1815. TPS allows an alien to become a lawful permanent resident, and "[s]ome TPS recipients need exactly that assistance—without needing a constructive admission." *Id*. For example, "a foreign national who entered the country legally on a tourist visa" but overstayed the visa's expiration can satisfy the lawful-permanent-resident statute's admission requirement but cannot show nonimmigrant status without a grant of TPS. *Id.* The Court acknowledged that "Congress . . . could have gone further"—granting TPS recipients nonimmigrant status *and* admission—but it did not. *Id*. It recognized, however, that despite not deeming TPS recipients lawfully admitted, "the statute does something—and this Court does not get to say that the something it does is not enough." *Id*.

Our precedent judicially expanding the statutory definition of "admission" based on the benefits conferred by a lawful status is "clearly irreconcilable," *Gammie*, 335 F.3d at 893, with *Sanchez*'s holding that "[l]awful status and admission . . . are distinct concepts in immigration law." 141 S. Ct. at 1813. As Hernandez argues, TPS recipients enjoy substantial benefits based on their lawful status. But *Sanchez* is clear that, no matter how great those benefits, TPS does not constitute an admission to the United States. *See id*. It is irrelevant that *Sanchez* analyzed whether a TPS recipient had been "admitted . . . into the United States" for purposes of adjusting his status rather than cancellation of removal. *See id.* at 1812–13. Instead, what matters is what *Sanchez* held that TPS did not do—confer admission. *See id.* at 1813. *See generally* 8 U.S.C. § 1254a(f) (not including admission in the list of benefits and status conferred by TPS). Accordingly, we hold that *Sanchez* "effectively overrule[s]" our precedent judicially expanding the statutory definition of admission and also establishes that Hernandez's TPS does not constitute an admission "in any

status" under Section 1229b(a). *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (quoting *Gammie*, 335 F.3d at 900).

## 3.  Statutory Text

The plain language of the TPS statute reinforces our conclusion that receiving this status does not constitute an admission under the cancellation statute. *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) (interpretation of statutory text starts "where all such inquiries must begin: with the language of the statute itself" (quotation marks and citation omitted)); *see also In re Sosa Ventura*, 25 I. & N. Dec. 391, 392 (BIA 2010) ("There is nothing in the language of the statue to indicate that a grant of TPS renders an alien admissible to the United States."). Most compelling is the express statement that a grant of TPS does not constitute an admission. The statute specifies that it "shall [not] be construed as authorizing an alien to apply for admission to, or *to be admitted to*, the United States in order to apply for temporary protected status under this section." 8 U.S.C. § 1254a(c)(5) (emphasis added). This language establishes that the statute presumes that an alien who is eligible for TPS already has been admitted to the United States. *See Sanchez v. Sec'y U.S. Dep't of Homeland Sec.*, 967 F.3d 242, 246 (3rd Cir. 2020), *aff'd sub nom. Sanchez*, 141 S. Ct. at 1815. Accordingly, a conclusion that TPS constitutes an admission under the cancellation statute contradicts the statutory text.

Moreover, the TPS statute states that "the period of such status shall not be counted as a period of physical presence in the United States *for purposes of § 1229b(a) of this title*, unless the Attorney General determines that extreme hardship exists." *See* 8 U.S.C. § 1254a(e) (emphasis added). Although Hernandez seeks to use his TPS to establish the

cancellation statute's admission requirement, not its residence requirement, this language indicates that TPS is a disfavored way to establish any of the cancellation-of-removal requirements. *See id*. Additionally, as discussed above, notably absent from the statute's list of benefits is admission. *See generally id.* § 1254a(f); *see also Bates v. United States*, 522 U.S. 23, 29 (1997) (declining to "read[] words or elements into a statute that do not appear on its face"); *In re H-G-G-*, 27 I. & N. Dec. 617, 626 (Admin. App. Off. 2019) (observing that the TPS statute provided many benefits but did "not provide for the inspection, admission, or parole of an alien, as the terms are entirely absent").

Finally, the statute requires that an alien must be present in the United States to be eligible for TPS. *See* 8 U.S.C. § 1254a(c)(1)(A)(i). In contrast, the statutory definition of admission requires an entry into the United States and inspection by an immigration officer. *See* 8 U.S.C. § 1101(a)(13)(A). These requirements are contradictory—an alien outside the United States cannot receive TPS status and an alien inside the United States cannot cross the border. This weighs against concluding that a grant of TPS satisfied the admission requirement for cancellation.

Turning specifically to the LPR-cancellation statute's seven-year residency requirement, the plain language of this provision also supports our holding that Section 1101(a)'s definition of admission controls whether an alien is admitted for purposes of cancellation. *See Appling*, 138 S. Ct. at 1759. An alien must have resided continually in the United States "after having been admitted in any status." 8 U.S.C. § 1229b(a). The "admission in any status" requirement focuses on *admission* statuses, not on a unique definition of admission based on an assessment of the benefits conferred by an alien's lawful status. *See Bates*, 522 U.S. at 29. This

makes sense given the numerous statuses under which an alien can gain lawful admission to the United States—for example, family-sponsored statuses, employment-based statuses, refugees, and special agricultural workers. *See, e.g.*, 8 U.S.C. §§ 1151(c)–(d), 1157, and 1160. In sum, "in any status" refers to the various ways that an alien may be admitted to the United States.

For all these reasons, we hold that receiving TPS is not an admission to the United States. Therefore, because Hernandez initially entered the United States unlawfully, he was not "admitted" until he became a lawful permanent resident in 2010. Accordingly, Hernandez cannot satisfy the requirement that he "reside[] in the United States continuously for 7 years after having been admitted in any status, 8 U.S.C. § 1229b(a), and he is not eligible for cancellation of removal.

## B.  Asylum

An alien who has been convicted of a "particularly serious crime" is ineligible for asylum. 8 U.S.C. § 1158(b)(2)(B)(i). The question here is whether Hernandez's 2016 domestic-violence conviction was a particularly serious crime. Because the BIA relied on the IJ's reasoning in determining that Hernandez's conviction was particularly serious, "we review both the IJ's and the BIA's decisions." *Alanniz*, 924 F.3d at 1065.

In determining whether a crime is particularly serious such that it bars an alien from receiving asylum, the IJ and BIA must conduct a case-specific, factual analysis that considers the "nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and most importantly, whether the type and circumstances of the crime indicate that the alien will be a

danger to the community." *Flores-Vega v. Barr*, 932 F.3d 878, 884 (9th Cir. 2019) (quoting *In re Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982)); *see* 8 U.S.C. §§ 1231(b)(3)(B)(ii), 1252(a)(2)(C). Hernandez argues that the agency applied an improper legal standard when it determined that his 2016 domestic-violence conviction was a particularly serious crime by considering the *cumulative effect* of his three domestic-violence convictions, instead of considering his third conviction in 2016 alone. We disagree.

The record establishes that the IJ and BIA based their particularly-serious-crime determination specifically on Hernandez's 2016 domestic-violence conviction. For example, the IJ concluded that Hernandez's "March 2, 2016 conviction . . . is particularly serious" and that "his third conviction is particularly serious in nature." And the BIA recognized that the IJ's particularly-serious-crime finding was based on Hernandez's "last domestic violence conviction," and it likewise concluded that his "third conviction for domestic violence in a little over a year was 'particularly serious.'" These specific references to Hernandez's third domestic-violence conviction make clear that the BIA did not hold that all three convictions, considered collectively, constituted a particularly serious crime. Rather, the agency held only that the third conviction was particularly serious *in light of* the previous convictions. *See Delgado v. Holder*, 648 F.3d 1095, 1108 (9th Cir. 2011) (en banc) (distinguishing between a conclusion that "three convictions, when viewed *cumulatively*, rise to the level of a particularly serious crime" and that "one of the convictions—presumably the third—rises to the level of a particularly serious crime *in light of* Delgado's two earlier convictions").

We need not address whether the BIA's consideration of Hernandez's prior convictions in deciding that his third conviction was particularly serious was proper because Hernandez did not "specifically and distinctly" argue that this was error in his opening brief. *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1065 (9th Cir. 2020). Most of the relevant portion of his brief focuses on his mistaken argument that the agency considered his convictions *cumulatively*. To the extent Hernandez challenges the agency's ability to give any consideration to his prior convictions in concluding that his third conviction was particularly serious, he did so only in a single sentence, and without "coherently develop[ing]" the argument. *See United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997). Therefore, to the extent Hernandez raised this issue at all, it is forfeited. *See id.*

**PETITION FOR REVIEW DENIED.**