NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

NOV 12 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ANGIE KATHERINE CARDENAS-RUIZ; A.C., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 24-288 <br><br> Agency Nos. <br> A240-291-175 <br> A240-291-174 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 7, 2025**
Portland, Oregon

Before: M. SMITH, NGUYEN, and H.A. THOMAS, Circuit Judges.

Petitioner Angie Cardenas-Ruiz ("Cardenas-Ruiz") and her infant daughter

petition for review of a Board of Immigration Appeals ("BIA") decision affirming

an order by an Immigration Judge ("IJ") denying their applications for asylum,

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

withholding of removal, and Convention Against Torture ("CAT") protection.[1]

We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

"When the BIA reviews the IJ's decision de novo, 'our review is limited to the BIA's decision except to the extent that the IJ's opinion is expressly adopted.'" *Park v. Garland*, 72 F.4th 965, 974 (9th Cir. 2023) (quoting *Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021)). Here, to the extent the BIA incorporated the IJ's decision into its own, we review both decisions. *See Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014). "We review factual findings for substantial evidence and legal questions de novo." *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (quoting *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020)).

1. The BIA erred in finding that the harm inflicted on Cardenas-Ruiz did not rise to the level of persecution. We have applied both the substantial evidence and de novo standards of review to determinations that past harm did not rise to the level of persecution. *Compare Kaur v. Wilkinson*, 986 F.3d 1216, 1221 (9th Cir. 2021) (applying de novo review), *with Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021) (applying substantial evidence review). However, we need not decide which standard of review generally applies because the harm that Cardenas-Ruiz

---

[1] On appeal, Cardenas-Ruiz fails to challenge the denial of relief under the CAT and has therefore forfeited this claim. *See Hernandez v. Garland*, 47 F.4th 908, 916 (9th Cir. 2022) (as amended) (quoting *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1065 (9th Cir. 2020) (holding that issues not "specifically and distinctly" argued in an opening brief may be deemed forfeited).

suffered rose to the level of persecution even under the more deferential substantial evidence standard. *See Flores Molina*, 37 F.4th at 633 n.2; *Singh v. Garland*, 57 F.4th 643, 652 (9th Cir. 2023) (as amended).

In each case "[t]he key question is whether, looking at the cumulative effect of all the incidents that a [p]etitioner has suffered, the treatment [she] received rises to the level of persecution." *Sharma*, 9 F.4th at 1061 (quoting *Gormley v. Ashcroft*, 364 F.3d 1172, 1176–77 (9th Cir. 2004)). "[W]e have 'repeatedly held that threats may be compelling evidence of past persecution, particularly when they are specific and menacing and are accompanied by evidence of violent confrontations, near-confrontations and vandalism.'" *Flores Molina*, 37 F.4th at 634 (quoting *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004)). "We have also explained that some forms of physical violence are so extreme that even *attempts* to commit them constitute persecution." *Kaur*, 986 F.3d at 1223. An "attempted rape almost always constitutes persecution." *Id.* at 1224. Harms to a petitioner's family members or close friends strengthen a past persecution claim. *See Singh*, 57 F.4th at 654.

Cardenas-Ruiz credibly testified that she was told that her family would be harmed if she did not join the Revolutionary Armed Forces of Colombia ("FARC"), that what happened to her mother and brother—death and/or disappearance—would happen to her and her daughter if she did not cooperate, and

repeatedly that she and her family would have to "deal with the consequences" of not complying with the FARC's demands. These threats did not occur in isolation. When Cardenas-Ruiz was 14 years old, a guerrilla attempted to rape her shortly after she was first recruited by the FARC, but a farmer and his son intervened, allowing her to escape. Two days later, the farmer and his son were found dead; the farmer was decapitated, and the son was partially decapitated and his eyelids and ears were removed. Cardenas-Ruiz also testified that she believed the FARC had thrown a grenade close to her mother's home and later murdered her, and that the FARC was involved in the disappearance of her brother after she was told that he was targeted for recruitment. The cumulative effect of the attempted rape, violence, harassment, and threats directed at Cardenas-Ruiz and her family rose to the level of persecution. *See Kaur*, 986 F.3d at 1226–27 (holding that the petitioner suffered past persecution where she was subjected to attempted rape, death threats, and violence directed against family members).

2. However, the error in evaluating the level of harm that Cardenas-Ruiz suffered here is harmless because substantial evidence supports the BIA's conclusion that the Colombian government was not unwilling or unable to control the FARC. *See Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir. 2000); *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 788 (9th Cir. 2004). The police attempted to investigate Cardenas-Ruiz's mother's death, and the country conditions evidence showed that

the government generally sought to investigate, prosecute, and punish dissident groups, including the FARC.[2]

3. Cardenas-Ruiz contends that the IJ violated her due process rights. "Where an [applicant] is given a full and fair opportunity to be represented by counsel, to prepare an application for . . . relief, and to present testimony and other evidence in support of the application, he or she has been provided with due process." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926–27 (9th Cir. 2007). In addition to showing a due process violation, a petitioner generally must show prejudice, "meaning the violation potentially affected the outcome of the immigration proceeding." *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018). Cardenas-Ruiz raises three due process complaints regarding: (1) her right to counsel; (2) the adequacy of the IJ's advisals, development of the record, and evidentiary determinations; and (3) the BIA's review of her arguments. None of the alleged violations warrant relief.

"In order for a waiver [of the right to counsel] to be valid, an IJ must generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response."

---

[2] Cardenas-Ruiz also challenges the BIA's determination that she could reasonably and safely relocate within Colombia to avoid future persecution. However, because we find Cardenas-Ruiz has not satisfied the eligibility requirements for asylum and withholding of removal, we do not address this issue.

*Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (citations omitted). "When a petitioner does not waive the right to counsel, 'IJs must provide [the petitioner] with reasonable time to locate counsel and permit counsel to prepare for the hearing.'" *Arrey v. Barr*, 916 F.3d 1149, 1158 (9th Cir. 2019) (quoting *Biwot v. Gonzales*, 403 F.3d 1094, 1098–99 (9th Cir. 2005)). Cardenas-Ruiz's right to counsel was not violated because the IJ explained her right to counsel, provided multiple continuances over many months for her to obtain representation, warned her that the case would continue even if she did not have an attorney, and specifically inquired if she was "prepared to proceed on [her] own" and she affirmed that she was prepared to do so.

"[T]he IJ must [also] adequately explain the hearing procedures to the [noncitizen], including what [s]he must prove to establish [her] basis for relief." *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002). The IJ satisfied this requirement here by advising Cardenas-Ruiz regarding immigration court procedures and her rights, providing her with an asylum application and instructions, informing her that she must provide evidence in support of her claims, and repeatedly confirming that she did not have any questions. The IJ also asked probing questions and elicited pertinent testimony from Cardenas-Ruiz. While Cardenas-Ruiz argues that the IJ erred by failing to ask her about eligibility for other forms of relief, such as U nonimmigrant status, the IJ was not required to do

6                                                                      24-288

so. An IJ only has to inform a petitioner subject to removal proceedings of "apparent eligibility to apply for [relief]." *C.J.L.G. v. Barr*, 923 F.3d 622, 626 (9th Cir. 2019) (en banc) (quoting 8 C.F.R. § 1240.11(a)(2)). Apparent eligibility "is triggered whenever the facts before the IJ raise a 'reasonable possibility that the petitioner may be eligible for relief.'" *Id.* at 627 (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989)). Here, there were not sufficient facts in the record to trigger apparent eligibility for a nonimmigrant U visa.

Moreover, Cardenas-Ruiz contends that the IJ violated her due process rights by admitting the Colombia 2021 Human Rights Report without providing an opportunity for her to review it. "Congress has specifically provided that [a noncitizen] in a removal proceeding must have 'a reasonable opportunity to examine the evidence against the [noncitizen], to present evidence on the [noncitizen's] own behalf, and to cross-examine witnesses presented by the Government . . . .'" *Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009) (quoting 8 U.S.C. § 1229a(b)(4)(B)). Here, the Government called attention to the parts of the report detailing the Colombian government's actions to control the FARC, and the IJ then summarized the contents of the report and asked Cardenas-Ruiz if she had any response. Cardenas-Ruiz explained that the FARC is still active and stated that they continue to commit the same crimes. Cardenas-Ruiz did not otherwise object to the admission of the report. Although Cardenas-Ruiz was

not provided an opportunity to review the report, she was told the pertinent parts of its contents by the IJ and given an opportunity to rebut it. *Cf. Cinapian*, 567 F.3d at 1071–75 (finding a due process violation where the petitioner was not given a reasonable opportunity to examine admitted evidence and rebut its allegations). On this record, no due process violation occurred.

Cardenas-Ruiz's argument that the IJ's rejection of her untranslated evidence violated due process is also unavailing. "[A petitioner] who faces deportation is entitled to a . . . reasonable opportunity to present evidence on [her] behalf." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). Cardenas-Ruiz had previously been told that only English materials would be admitted, and she presented other evidence, developed the record, and provided ample testimony in support of her claims. Accordingly, the IJ's decision not to rely on the untranslated documents does not raise any due process concerns here.

Lastly, Cardenas-Ruiz contends that the BIA did not address all of her arguments. Because the BIA's conclusion that the government was not unwilling or unable to control the FARC was dispositive to Cardenas-Ruiz's asylum and withholding claims, it was not required to address her other arguments.

**PETITION DENIED.**