**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

TWENTIETH CENTURY FOX
TELEVISION, a division of Twentieth
Century Fox Film Corporation; FOX
BROADCASTING COMPANY,
<em>Plaintiffs-Appellees</em>,

v.

EMPIRE DISTRIBUTION, INC.,
<em>Defendant-Appellant.</em>

</td>
<td>

No. 16-55577

D.C. No.
2:15-cv-02158-
PA-FFM

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted October 3, 2017
Pasadena, California

Filed November 16, 2017

Before:  DIANA GRIBBON MOTZ,[*] MILAN D. SMITH,
JR., and JACQUELINE H. NGUYEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Diana Gribbon Motz, United States Circuit Judge
for the U.S. Court of Appeals for the Fourth Circuit, sitting by
designation.

**SUMMARY**[**]

**Lanham Act / First Amendment**

Affirming the district court's summary judgment in favor of Twentieth Century Fox Television and Fox Broadcasting Company, the panel held that Fox's use of the name "Empire" was protected by the First Amendment, and was therefore outside the reach of the Lanham Act.

Fox sought a declaratory judgment that its television show titled *Empire* and associated music releases did not violate the trademark rights of record label Empire Distribution, Inc. Empire counterclaimed for trademark infringement and other causes of action.

The panel explained that when an allegedly infringing use is in the title or within the body of an expressive work, the *Rogers* test is used to determine whether the Lanham Act applies. The panel held that the *Rogers* test applied to Fox's use of the mark "Empire." The panel concluded that the first prong of the test was satisfied because it could not say that Fox's use of the mark had no artistic relevance to the underlying work; rather, the title *Empire* supported the themes and geographic setting of the work. The second prong of the test also was satisfied because the use of the mark "Empire" did not explicitly mislead consumers.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

John M. Bowler (argued), Michael D. Hobbs, and Lindsay Mitchell Henner, Troutman Sanders LLP, Atlanta, Georgia; Paul L. Gale and Peter N. Villar, Troutman Sanders LLP, Irvine, California; for Defendant-Appellant.

Daniel M. Petrocelli (argued), Molly M. Lens, and J. Hardy Ehlers, O'Melveny & Myers LLP, Los Angeles, California; James W. Crooks, O'Melveny & Meyers LLP, Washington, D.C.; for Plaintiffs-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Empire Distribution, Inc. appeals the district court's grant of summary judgment in favor of Twentieth Century Fox Television and Fox Broadcasting Company (collectively, Fox). Empire Distribution argues that the district court erred substantively and procedurally in holding that Fox's use of the name "Empire" was protected by the First Amendment, and was therefore outside the reach of the Lanham Act, ch. 540, 60 Stat. 441 (1946) (codified as amended at 15 U.S.C. § 1125). We disagree, and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Empire Distribution, founded in 2010, is a well-known and respected record label that records and releases albums in the urban music genre, which includes hip hop, rap, and R&B. Empire Distribution has released many albums by established and lesser-known artists as well as music compilations with titles such as *EMPIRE Presents: Ratchet*

*Music*, *EMPIRE Presents: Yike 4 Life*, and *EMPIRE Presents: Triple X-Mas*.

In 2015, Fox premiered a television show titled *Empire*, which portrays a fictional hip hop music label named "Empire Enterprises" that is based in New York. The show features songs in every episode, including some original music. Under an agreement with Fox, Columbia Records releases music from the show after each episode airs, as well as soundtrack albums at the end of each season. Fox has also promoted the *Empire* show and its associated music through live musical performances, radio play, and consumer goods such as shirts and champagne glasses bearing the show's "Empire" brand.

In response to a claim letter from Empire Distribution, Fox filed suit on March 23, 2015, seeking a declaratory judgment that the *Empire* show and its associated music releases do not violate Empire Distribution's trademark rights under either the Lanham Act or California law. Empire Distribution counterclaimed for trademark infringement, trademark dilution, unfair competition, and false advertising under the Lanham Act and California law, and sought both injunctive and monetary relief. Fox moved for summary judgment, and Empire Distribution's opposition to Fox's motion included a request for a continuance under Federal Rule of Civil Procedure 56(d) in order to complete discovery. On February 1, 2016, the district court denied Empire Distribution's request, and granted summary judgment to Fox on all claims and counterclaims. Empire Distribution moved for reconsideration, which was denied. Empire Distribution timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's decision to grant summary judgment de novo, considering all facts in dispute in the light most favorable to the nonmoving party." *Glenn v. Washington Cty.*, 673 F.3d 864, 870 (9th Cir. 2011).

## ANALYSIS

In general, claims of trademark infringement under the Lanham Act are governed by a likelihood-of-confusion test. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). When the allegedly infringing use is in the title of an expressive work, however, we instead apply a test developed by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to determine whether the Lanham Act applies. *Mattel*, 296 F.3d at 902.[1] Like the Second Circuit, we have identified two rationales for treating expressive works differently from other covered works: because (1) they implicate the First Amendment right of free speech, which must be balanced against the public interest in avoiding consumer confusion; and (2) consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement. *See Rogers*, 875 F.2d at 997–1000; *Mattel*, 296 F.3d at 900, 902.

Under the *Rogers* test, the title of an expressive work does not violate the Lanham Act "unless the title has no

---

[1] As we noted in *Mattel*, the *Rogers* test is a limiting construction of the Lanham Act. 296 F.3d at 901 (quoting *Rogers*, 875 F.2d at 999). The parties have offered no arguments in this appeal concerning the state law claims and counterclaims in their pleadings, and we thus have no occasion to address whether the *Rogers* test applies to any state laws.

artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Mattel*, 296 F.3d at 902 (internal quotation marks omitted) (quoting *Rogers*, 875 F.2d at 999). We have extended this test from titles to allegedly infringing uses within the body of an expressive work. *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).

## DOES THE *ROGERS* TEST APPLY TO FOX'S USE OF THE MARK "EMPIRE?"

We must first determine whether the *Rogers* test applies to Fox's use of the mark "Empire." We decide this legal question de novo. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1240–41 (9th Cir. 2013).

Empire Distribution argues that at least some of Fox's uses of the mark "Empire" fall outside the title or body of an expressive work, and therefore outside the scope of the *Rogers* test. The *Empire* television show itself is clearly an expressive work, *see Charles v. City of Los Angeles*, 697 F.3d 1146, 1151–52 (9th Cir. 2012), as are the associated songs and albums, *see Mattel*, 296 F.3d at 902, but Empire Distribution asserts that Fox's use of the mark "Empire" extends well beyond the titles and bodies of these expressive works. Specifically, Empire Distribution points to Fox's use of the "Empire" mark "as an umbrella brand to promote and sell music and other commercial products." These promotional activities under the "Empire" brand include appearances by cast members in other media, radio play, online advertising, live events, and the sale or licensing of consumer goods.

Although it is true that these promotional efforts technically fall outside the title or body of an expressive

work, it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold. Indeed, the *Rogers* case itself concerned both a movie with an allegedly infringing title and its advertising and promotion, although the majority opinion did not deal separately with the latter aspect. *See Rogers*, 875 F.3d at 1005 (Griesa, J., concurring in the judgment). The balance of First Amendment interests struck in *Rogers* and *Mattel* could be destabilized if the titles of expressive works were protected but could not be used to promote those works. In response, Empire Distribution raises the specter of a pretextual expressive work meant only to disguise a business profiting from another's trademark, but the record in this case makes clear that the *Empire* show is no such thing. Fox's promotional activities, including those that generate revenue, are auxiliary to the television show and music releases, which lie at the heart of its "Empire" brand.

Empire Distribution also claims that Fox's uses of the "Empire" mark fall within the Lanham Act due to a footnote in *Rogers*, which stated that *Rogers*' "limiting construction would not apply to misleading titles that are confusingly similar to other titles [because the] public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles." 875 F.2d at 999 n.5. This footnote has been cited only once by an appellate court since *Rogers*, in a case in which the Second Circuit itself rejected its applicability and applied the *Rogers* test. *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 494–95 (2d Cir. 1989). The exception the footnote suggests may be ill-advised or unnecessary: identifying "misleading titles that are confusingly similar to other titles" has the potential to duplicate either the likelihood-of-confusion test or the

second prong of *Rogers*, which asks whether a title "explicitly misleads as to the source or the content of the work." *Mattel*, 296 F.3d at 902 (quoting *Rogers*, 875 F.2d at 999). More importantly, it conflicts with our precedents, which "dictate that we apply the *Rogers* test in [Lanham Act] § 43(a) cases involving expressive works." *Brown*, 724 F.3d at 1241–42. We therefore examine Fox's use of the "Empire" mark under that test.

## APPLYING THE *ROGERS* TEST

### I

Under the two prongs of the *Rogers* test, "the Lanham Act should not be applied to expressive works 'unless the [use of the trademark or other identifying material] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [trademark or other identifying material] explicitly misleads as to the source or the content of the work.'" *Brown*, 724 F.3d at 1242 (alterations in original) (quoting *Rogers*, 875 F.2d at 999). In addition to these two prongs, Empire Distribution argues that the *Rogers* test incudes a threshold requirement that a mark have attained a meaning beyond its source-identifying function.

What Empire Distribution identifies as a threshold requirement is merely a consideration under the first prong of the *Rogers* test. Trademark suits often arise when a brand name enters common parlance and comes to signify something more than the brand itself, but we apply the *Rogers* test in other cases as well. In *Mattel*, we noted that some trademarks, such as Rolls-Royce or Band-Aid, "enter our public discourse and become an integral part of our vocabulary." 296 F.3d at 900. The ordinary likelihood-of-confusion test provides insufficient protection against a

trademark owner's ability to control public discourse in these cases—but not *only* in these cases. *Mattel* focused on these examples, in which "the mark (like Rolls Royce) has taken on an expressive meaning apart from its source-identifying function," as part of a larger class of cases in which "a trademark owner asserts a right to control how we express ourselves." *Id.*[2] In other words, the only threshold requirement for the *Rogers* test is an attempt to apply the Lanham Act to First Amendment expression.

Of course, the cultural significance of a mark may often be relevant to the first prong of the *Rogers* test. Trademarks that "transcend their identifying purpose," *id.*, are more likely to be used in artistically relevant ways. For example, at issue in *Mattel* was a song titled "Barbie Girl," which poked fun at the shallow materialism identified with Mattel's trademarked Barbie brand of dolls. *Id.* at 899, 901. Barbie's status as a "cultural icon" helped explain the artistic relevance of Mattel's doll to the song. *Id.* at 898, 901–02. A mark that has no meaning beyond its source-identifying function is more likely to be used in a way that has "no artistic relevance to the underlying work whatsoever," *id.* at 902 (quoting *Rogers*, 875 F.2d at 999), because the work may be "merely borrow[ing] another's property to get attention," *id.* at 901. *See, e.g.*, *Dr. Seuss Ents., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1401 (9th Cir. 1997) (holding that an account of the O.J. Simpson murder trial titled *The Cat NOT in the Hat!* borrowed Dr. Seuss's

---

[2] Empire Distribution's argument for a threshold requirement is also belied by the example given in *Mattel* of "a painting titled 'Campbell's Chicken Noodle Soup,'" which would be analyzed under the *Rogers* test if Campbell's brought suit. *Id.* at 902. Although Campbell's is an iconic soup brand, its brand name has not attained a meaning beyond its source-identifying function.

trademark and poetic style only "'to get attention' or maybe even 'to avoid the drudgery in working up something fresh.'" (citation omitted)).

In this case, Fox used the common English word "Empire" for artistically relevant reasons: the show's setting is New York, the Empire State, and its subject matter is a music and entertainment conglomerate, "Empire Enterprises," which is itself a figurative empire. Because we cannot say that Fox's use of the "Empire" mark "has no artistic relevance to the underlying work whatsoever," the first prong of the *Rogers* test is satisfied.

Empire Distribution does not dispute that the title "Empire" is relevant to Fox's work in this sense, but it argues that the first prong of the *Rogers* test includes a requirement that the junior work refer to the senior work. In this case, Empire Distribution argues that the *Empire* show fails the test because its use of the word "Empire" does not refer to Empire Distribution. This referential requirement does not appear in the text of the *Rogers* test, and such a requirement would be inconsistent with the purpose of the first prong of *Rogers*.

The first prong of *Rogers* distinguishes cases in which the use of the mark has some artistic relation to the work from cases in which the use of the mark is arbitrary. In these latter cases, the First Amendment interest is diminished. The bar is set low: "the level of relevance merely must be above zero." *E.S.S. Entm't*, 547 F.3d at 1100. Empire Distribution argues that cases like *Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003), show that this prong contains a referential requirement. In *Parks*, the Sixth Circuit held that a district court erred in concluding as a matter of law that the title of the song "Rosa Parks" by the hip hop duo OutKast was artistically relevant to the work. *Id.* at 452–59. Despite

the song's use of the civil rights figure's name, "[t]he composers did *not* intend it to be about Rosa Parks, and the lyrics are *not* about Rosa Parks." *Id.* at 452. There was no question, however, that the title *did* refer to Parks; no one contended the name was a coincidence. The Sixth Circuit suggested that OutKast had chosen an irrelevant title that "unquestionably enhanced the song's potential sale to the consuming public." *Id.* at 453. A reasonable person could find that the song "Rosa Parks" failed the *Rogers* test not because of a lack of relationship between the title "Rosa Parks" and the person Rosa Parks, but because of the "highly questionable" artistic relevance of the title "Rosa Parks" to the song itself—the underlying work. *Id.* at 459.

This is how a work fails the first prong of the *Rogers* test: by bearing a title which has no artistic relevance to the work. A title may have artistic relevance by linking the work to another mark, as with "Barbie Girl," or it may have artistic relevance by supporting the themes and geographic setting of the work, as with *Empire*. Reference to another work may be a component of artistic relevance, but it is not a prerequisite. Accordingly, the relevance of the word "empire" to Fox's expressive work is sufficient to satisfy the first prong of the *Rogers* test.

## II

If the use of a mark is artistically relevant to the underlying work, the Lanham Act does not apply "unless the title explicitly misleads as to the source or the content of the work." *Mattel*, 296 F.3d at 902 (quoting *Rogers*, 875 F.2d at 999) (internal quotation mark omitted). Empire Distribution argues that the "relevant inquiry . . . is whether the defendant's use of the mark would confuse consumers as to the source, sponsorship or content of the work." But this test conflates the second prong of the *Rogers* test with the

general *Sleekcraft* likelihood-of-confusion test, which applies outside the *Rogers* context of expressive works. *See Mattel*, 296 F.3d at 900 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

To fail the second prong of the *Rogers* test, "[i]t is key . . . that the creator must *explicitly* mislead consumers." *Brown*, 724 F.3d at 1245. We must ask not only about the likelihood of consumer confusion but also "whether there was an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that caused such consumer confusion." *Id.* (quoting *Rogers*, 875 F.2d at 1001). As "the use of a mark alone is not enough to satisfy this prong of the *Rogers* test," *id.*, Fox's *Empire* show, which contains no overt claims or explicit references to Empire Distribution, is not explicitly misleading, and it satisfies the second *Rogers* prong.

## CLAIMED PROCEDURAL ERRORS

Empire Distribution's claims of procedural error are also meritless.

First, Empire Distribution argues that the district court abused its discretion in denying its Rule 56(d) motion to defer consideration of Fox's summary judgment motion in order to allow more time for discovery. The district court denied the 56(d) motion as moot in its order granting summary judgment, concluding that the requested additional discovery was not "germane or relevant" to the First Amendment issues (i.e., the *Rogers* test) which it found dispositive. The subjects of further discovery that Empire Distribution claims would have been relevant are "FOX's reason for selecting the 'EMPIRE' name, FOX's prior knowledge of EMPIRE's trademarks . . . , and FOX's marketing strategy to mislead consumers." None of these facts is relevant to either prong of the *Rogers* test: they shed

no light on the question of whether the word "Empire" is artistically related to the show, and they cannot make the use of that word explicitly misleading.  As these facts are irrelevant to the ground on which summary judgment was granted, Empire Distribution's request for further time to discover them was correctly denied as moot.

Second, Empire Distribution argues that the district court improperly relied on disputed facts in granting summary judgment.  Although it identifies several disputed facts that the district court allegedly resolved in favor of Fox, none of these facts is material to the application of the *Rogers* test. The application of the test comes out the same way whether or not Empire Distribution has validly registered trademarks to the "Empire" name and whether or not all of the songs Fox released under the "Empire" brand were later collected in compilation albums.  The fact that the *Empire* show is a "fictional" story was not a disputed fact, despite the evidence that it was based partly on individuals and events from the real world; fictional stories may take inspiration from reality. Finally, the district court's statement that the name "Empire" "was not arbitrarily chosen to exploit Empire Distribution's fame" was a legal conclusion relevant to the first prong of the *Rogers* test, not a statement of fact.  Since Empire Distribution cannot identify any disputed fact the district court relied on that was material to its grant of summary judgment, it has not shown error.

## CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.  Appellant shall bear costs on appeal.  Fed. R. App. P. 39(a)(2).

AFFIRMED.