**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PUNCHBOWL, INC., a Delaware corporation,

*Plaintiff-Appellant*,

v.

AJ PRESS, LLC, a Delaware limited liability company,

*Defendant-Appellee*.

No.21-55881

D.C. No.
2:21-cv-03010-
SVW-MAR

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted October 2, 2023
Las Vegas, Nevada

Filed January 12, 2024

Before: John B. Owens and Daniel A. Bress, Circuit
Judges, and Sidney A. Fitzwater,* District Judge.

Opinion by Judge Bress

---

*The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

## SUMMARY**

### Lanham Act

The panel reversed the district court's summary judgment in favor of the defendant in a trademark infringement suit involving two companies that used the word "Punchbowl" in their marks and remanded for further proceedings.

Applying *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), the panel held that the defendant's use of the Punchbowl mark was not outside the scope of the Lanham Act under the "*Rogers* test." Under this test, a trademark dispute concerning an expressive work protected by the First Amendment does not fall within the Lanham Act unless the defendant's use of the mark was not artistically relevant to the work or explicitly misled consumers as to the source or the content of the work. *Jack Daniel's* held that the *Rogers* test does not apply when the accused infringer has used a trademark to designate the source of its own goods. The panel concluded that, following *Jack Daniel's*, the Ninth Circuit's prior precedents were no longer good law insofar as they held that *Rogers* applied when an expressive mark was used as a mark, and that the only threshold for applying *Rogers* was an attempt to apply the Lanham Act to something expressive.

The panel held that *Rogers* did not apply here because the defendant was using the Punchbowl mark to identify and distinguish its news products. The panel instructed that, on

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

remand, the district court should proceed to a likelihood-of-confusion analysis under the Lanham Act.

## COUNSEL

Peter J. Willsey (argued) and Vincent Badolato, Brown Rudnick LLP, Washington, D.C.; Rececca M. Lecaroz and Melanie D. Burke, Brown Rudnick LLP, Boston, Massachusetts; David Stein, Brown Rudnick LLP, Irvine, California; for Plaintiff-Appellant.

Ian C. Ballon (argued) Nina D. Boyajian, and Rebekah S. Guyon, Greenberg Traurig LLP, Los Angeles, California, for Defendant-Appellee.

Cara L. Gagliano and Corynne McSherry, Electronic Frontier Foundation, San Francisco, California, Amici Curiae Electronic Frontier Foundation.

Eugene Volokh, UCLA First Amendment Clinic, UCLA School of Law, Los Angeles, California, Amici Curiae Law Professors.

## OPINION

BRESS, Circuit Judge:

This case requires us to apply the Supreme Court's recent decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), to a trademark infringement dispute involving two companies that use the word "Punchbowl" in their marks. Prior to *Jack Daniel's*, and bound by Ninth Circuit precedent, we held that under the

"*Rogers* test," *see Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), the defendant's use of the term "Punchbowl" was expressive in nature and not explicitly misleading as to its source, which meant it fell outside the Lanham Act as a matter of law. *See Punchbowl, Inc. v. AJ Press, LLC* (*Punchbowl I*), 52 F.4th 1091 (9th Cir. 2022), *opinion withdrawn*, 78 F.4th 1158 (9th Cir. 2023). With the benefit of *Jack Daniel's*, we now hold that *Rogers* does not apply because the defendant is using the mark to identify its products. Although it does not follow that the plaintiff will ultimately prevail or even survive a future dispositive motion, it does mean that the defendant's use of its mark is not immune from the traditional likelihood-of-confusion inquiry.

We reverse and remand for further proceedings.

## I

### A

The following facts come verbatim from our initial opinion in this case. *See Punchbowl I*, 52 F.4th at 1094–96.

Punchbowl, Inc. (Punchbowl), is a self-described "technology company that develops online communications solutions for consumers," with a "focus on celebrations, holidays, events and memory-making." Punchbowl provides "online event and celebration invitations and greetings cards" and "custom sponsorships and branded invitations," as part of a subscription-based service. Punchbowl also works with companies such as The Walt Disney Company, Chuck E. Cheese, and Dave & Busters to help them promote their brands through online invitations.

Punchbowl has used the mark Punchbowl® (the Mark) since at least 2006. It registered the Mark with the United

States Patent & Trademark Office in 2013. The Mark was registered primarily in connection with the "[t]ransmission of invitations, documents, electronic mail, announcements, photographs and greetings"; "[p]arty planning"; and "[p]reparation of electronic invitations, namely, providing . . . software that enables users to . . . customize electronic invitations."

Punchbowl promotes itself as "The Gold Standard in Online Invitations & Greeting Cards," as reflected in this record excerpt from Punchbowl's website:



A larger example of Punchbowl's Mark and logo (a punch ladle) is shown here:



But this is not the only Punchbowl. Journalists Jake Sherman and Anna Palmer are the co-founders of AJ Press, LLC, a company that "provides curated, non-partisan commentary, opinions, and critiques." In 2021, Palmer and Sherman co-founded *Punchbowl News* with reporter John Bresnahan. *Punchbowl News* is a subscription-based online news publication that covers topics in American government and politics. AJ Press owns and operates *Punchbowl News*, choosing which topics to cover and how to address them. AJ Press concentrates its reporting on the "insiders" who make decisions in Washington, D.C., (*i.e.*, politicians, aides, and lobbyists), and on events and news that affect American political dynamics and elections.

Given the publication's focus on Beltway politics, AJ Press wanted a name that evoked its subject matter. It chose "Punchbowl" because that is the nickname the Secret Service uses to refer to the U.S. Capitol. The title *Punchbowl News* was thus selected to "elicit the theme and geographic location" of the publication. AJ Press has filed trademark applications to register the marks "Punchbowl News" and "Punchbowl Press."

*Punchbowl News* often uses a slogan—"Power. People. Politics."—in connection with its name and logo. Like its name, AJ Press chose its slogan to reflect the subject matter and theme of the *Punchbowl News* publication. Similarly, AJ Press selected a logo to allude to the publication's focus on insider news and political commentary. The logo depicts an overturned U.S. Capitol filled with bright pink/purple punch—an apparently playful homage to a blend of the traditional red and blue associated with America's leading political parties that emphasizes the publication's nonpartisan stance. This is an example from the record of

*Punchbowl News*'s logo in conjunction with its slogan, as it appears on its website:



*Punchbowl News* frequently promotes its connection to its founders. Its website depicts a large image of Sherman, Palmer, and Bresnahan accompanied by text stating that *Punchbowl News* was "founded by journalists and best-selling authors Jake Sherman and Anna Palmer, and co-founded by veteran Capitol Hill reporter John Bresnahan." *Punchbowl News*'s publications state at the top, near the name "*Punchbowl News*," that they are "by John Bresnahan, Anna Palmer, and Jake Sherman."

## B

The parties' coinciding uses of "Punchbowl" led to this lawsuit. Punchbowl sued AJ Press, alleging violations of the Lanham Act for trademark infringement and unfair competition. 15 U.S.C. §§ 1114, 1125(a). Punchbowl also brought related state law claims.

The district court converted AJ Press's motion to dismiss into a motion for summary judgment. The court then granted summary judgment to AJ Press, concluding that its use of the name "Punchbowl" did not give rise to liability under the *Rogers* test because it constituted protected expression and was not explicitly misleading as to its source. The district court also denied Punchbowl's request for a continuance

under Federal Rule of Civil Procedure 56(d) to conduct additional discovery.

In November 2022, we affirmed. *See Punchbowl I*, 52 F.4th at 1094. Applying circuit precedent, including this court's decision in *VIP Products LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170 (9th Cir. 2020), *vacated*, 599 U.S. 140 (2023), we held that AJ Press's use of the Mark was expressive in nature and outside the scope of the Lanham Act under the *Rogers* test. *See Punchbowl I*, 52 F.4th at 1097–1104. That was so even though AJ Press used the Mark to identify its commercial brand. *Id.* at 1099–1100.

The week after we issued our opinion in *Punchbowl I*, the Supreme Court granted certiorari in *Jack Daniel's*, a case in which our court applied *Rogers* to hold that a dog chew toy resembling a bottle of Jack Daniel's whiskey was protected First Amendment expression, to which the Lanham Act did not apply. Because our opinion in *Punchbowl I* relied on both our court's decision in *Jack Daniel's* and a body of Ninth Circuit precedent applying *Rogers*, we promptly stayed the mandate in *Punchbowl I* to await the Supreme Court's decision in *Jack Daniel's*. In June 2023, the Supreme Court issued its opinion in *Jack Daniel's*, reversing this court.

In light of the Supreme Court's decision, we withdrew our opinion in *Punchbowl I*. *See* 78 F.4th 1158. We then ordered the parties to file supplemental briefs and heard re-argument. Our review here is de novo. *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).

## II

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, "creates a comprehensive framework for regulating the use of

trademarks and protecting them against infringement, dilution, and unfair competition." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 263 (9th Cir. 2018) (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010)). Traditionally, courts apply a likelihood-of-confusion test to claims brought under the Lanham Act. *See id.* at 264. Under this test, we ask "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (citation omitted); *see also Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1252 (9th Cir. 2022). That analysis requires consideration of the eight "*Sleekcraft*" factors: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). Under *Rogers*, however, we have held that background First Amendment concerns sometimes require a heightened showing for a trademark infringement claim to proceed.

The question in this case is whether Punchbowl's claims against AJ Press fall under *Rogers*. In *Punchbowl I*, we said "yes." But that was before *Jack Daniel's*. We now hold that *Rogers* does not apply to this case. To explain why *Jack Daniel's* dictates a different result than we reached previously, we first provide an overview of our circuit's pre-*Jack Daniel's* case law applying *Rogers*, as well as our prior

decision in *Punchbowl I*. We then examine the Supreme Court's decision in *Jack Daniel's*. Finally, we explain why *Jack Daniel's* limitation of the *Rogers* test governs this case. The upshot is that Punchbowl's claims against AJ Press are not excluded from the Lanham Act under *Rogers*, even as additional questions remain as to whether this lawsuit can proceed further or ultimately succeed.

## A

We begin with *Rogers*. Our precedents applying *Rogers* were borne of the idea that some trademarks have expressive value and that in those situations, trademark law's traditional likelihood-of-confusion test "fails to account for the full weight of the public's interest in free expression." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). To "avoid conflict" between the First Amendment and the Lanham Act, *Gordon*, 909 F.3d at 264, we adopted the approach of the Second Circuit in *Rogers v. Grimaldi* to frame the inquiry into when the Lanham Act applies to a trademark dispute. *See Mattel*, 296 F.3d at 902.

Under the *Rogers* test, and prior to *Jack Daniel's*, the defendant must first "make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264. If the defendant meets this burden, the Lanham Act does not apply unless "the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* (citing *Mattel*, 296 F.3d at 902). "Neither of these prongs is easy to meet." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020). "Artistic relevance" in *Rogers*'s first prong means artistic relevance "merely . . . above zero," such that a trademark infringement plaintiff can

avoid *Rogers* only if the use of the mark has "*no* artistic relevance to the underlying work *whatsoever*." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099–1100 (9th Cir. 2008) (quoting *Mattel*, 296 F.3d at 902). And to be "explicitly misleading" under *Rogers*'s second prong, there must be "'an explicit indication, overt claim, or explicit misstatement' about the source of the work." *Dr. Seuss Enters., L.P.*, 983 F.3d at 462 (quoting *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013)). When the *Rogers* test applies, it often precludes claims of trademark infringement. *See Gordon*, 909 F.3d at 261.

Our precedents have applied *Rogers* to a range of expressive works. For example, the *Rogers* test applied to a suit by Mattel, the manufacturer of Barbie dolls, against a European band that produced the song "Barbie Girl." *Mattel*, 296 F.3d at 901. We held that the song, which featured lyrics such as "I'm a blond bimbo girl, in a fantasy world," used the Barbie mark in a way that was artistically relevant to the work's satirical commentary on the "Barbie" lifestyle. *Id.* at 902. The work was also not "explicitly misleading" under *Rogers*'s second prong because it only used the name "Barbie" in the song and title and "d[id] not, explicitly or otherwise, suggest that it was produced by Mattel." *Id.* In addition to *Mattel*, we have applied *Rogers* to various other expressive works. *See, e.g.*, *Dr. Seuss Enters., L.P.*, 983 F.3d at 461 (applying *Rogers* to the use of "Seussian font" and "Seussian style of illustration" in a comic book); *E.S.S. Ent. 2000*, 547 F.3d at 1100 (applying *Rogers* where the defendant distributed a video game that parodied the plaintiff's strip club); *Walking Mountain Prods.*, 353 F.3d at 807 (applying *Rogers* to the use of the Barbie mark in titles of photographs).

But our precedents also rejected the theory that "the *Rogers* test includes a threshold requirement that a mark have attained a meaning beyond its source-identifying function." *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1197 (9th Cir. 2017). Instead, this was "merely a consideration under the first prong of the *Rogers* test." *Id.* The result was that "the only threshold requirement for the *Rogers* test [wa]s an attempt to apply the Lanham Act to First Amendment expression." *Id.* at 1198. We thus held in *Twentieth Century Fox* that the use of the "Empire" mark as an umbrella brand did not take the case outside of *Rogers*. *Id.* at 1196–97.

Our decision in *Jack Daniel's* emerged from this line of cases. There, VIP Products sold a "Bad Spaniels Silly Squeaker" rubber dog chew toy that, with humorous dog-themed alterations, resembled the distinctive bottle of Jack Daniel's Old No. 7 Black Label Tennessee Whiskey. 953 F.3d at 1172. We held that the *Rogers* test barred Lanham Act liability for the Bad Spaniels Silly Squeaker. *Id. Rogers* applied because "the Bad Spaniels dog toy, although surely not the equivalent of the *Mona Lisa*, is an expressive work." *Id.* at 1175.

This was the state of the law when we decided *Punchbowl I*. In that first iteration of this appeal, we held that Punchbowl's trademark infringement claim against AJ Press failed as a matter of law because *Rogers* and its progeny insulated AJ Press from liability under the Lanham Act. We first rejected Punchbowl's argument that this case "lies outside of *Rogers*'s domain" because *Rogers* "does not extend to the brand name of a commercial enterprise." *Punchbowl I*, 52 F.4th at 1097 (brackets and quotation marks omitted). We disagreed with that proposition because under circuit precedent, "[t]he only threshold requirement for the

*Rogers* test is an attempt to apply the Lanham Act to First Amendment expression," meaning that "whether 'a mark has attained a meaning beyond its source-identifying function' is not a threshold requirement for applying *Rogers*." *Id.* at 1097, 1099 (brackets omitted) (quoting *Twentieth Century Fox*, 875 F.3d at 1198). AJ Press used the word "Punchbowl" to convey a "D.C. insider perspective" and a "gossipy" political theme. *Id.* at 1098. Relying on our court's decision in *Jack Daniel's*, we observed that "[i]f a rubber dog toy is expressive under *Rogers*, we have little doubt that AJ Press's use of the Punchbowl Mark is as well." *Id.* (citation omitted).

Turning to the two prongs of the *Rogers* test, we held that AJ Press's use of the mark was artistically relevant to its publications and that AJ Press did not explicitly mislead consumers as to the source or content of its work. *Id.* at 1100–03. Although AJ Press used the same core word in its mark ("Punchbowl"), under our case law "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *Id.* at 1100 (quoting *E.S.S. Ent.*, 547 F.3d at 1100). Because AJ Press was using the mark in a different context than Punchbowl (the former for political news and the latter for online greeting cards), and because AJ Press had added its own expressive content, such as a slogan and logo, AJ Press's use of the Mark was not explicitly misleading. *Id.* at 1101–03. Thus, *Rogers* applied, and AJ Press was not subject to trademark liability for its use of the Mark.

## B

Enter the Supreme Court in *Jack Daniel's*. The Court in *Jack Daniel's* was careful to note that it was not opining on the broader validity of the *Rogers* test. *See* 599 U.S. at 145

("[W]e do not decide whether the threshold inquiry applied in the Court of Appeals is ever warranted."); *id.* at 163 ("We do not decide whether the *Rogers* test is ever appropriate . . . ."). At the same time, *Jack Daniel's* held that the *Rogers* threshold inquiry "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark. That kind of use falls within the heartland of trademark law, and does not receive special First Amendment protection." *Id.* at 145.

*Jack Daniel's* was clear on this point. Said the Court: "Without deciding whether *Rogers* has merit in other contexts, we hold that it does not when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." *Id.* at 153; *see also, e.g.*, *id.* at 156 (the *Rogers* test does not "insulate[] from ordinary trademark scrutiny the use of trademarks as trademarks, 'to identify or brand a defendant's goods or services.'" (alterations omitted)); *id.* at 163 ("*Rogers* does not apply when the challenged use of a mark is as a mark."). This rule applies, the Court went on, even if "the use of a mark has other expressive content—*i.e.*, because it conveys some message on top of source." *Id.* at 157. In the Supreme Court's view, because "trademarks are often expressive," applying *Rogers* whenever a trademark has expressive connotations would allow *Rogers* to "take over much of the world." *Id.* at 158.

The Court located its "use of a mark as a mark" carveout from *Rogers* in both the Lanham Act itself and the body of lower court precedent applying *Rogers*. From the perspective of the Lanham Act, "whether the use of a mark is serving a source-designation function" is "crucial" for the Act's objective of "ensur[ing] that consumers can tell where

goods come from." *Id.* at 163. And, *Jack Daniel's* explained, lower courts applying *Rogers* had similarly "confined it" to cases "in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Id.* at 154. The Court cited as an example our decision in the *Mattel* case, which, as discussed above, held that *Rogers* applied to the song "Barbie Girl." *Id.* In *Mattel*, "the band's use of the Barbie name was 'not as a source identifier'" because "[t]he use did not 'speak to the song's origin.'" *Id.* (brackets omitted) (quoting *Mattel*, 296 F.3d at 900, 902).

*Jack Daniel's* explained that when a mark is not used as a mark, lower courts had found that the risk of consumer confusion about the source of a work was "slight" and "unlikely," providing greater justification for *Rogers*'s threshold test. *Id.* at 153, 155 (citations and quotation marks omitted). This "cabined" understanding of *Rogers* more properly aligned with the Lanham Act, the purpose of which is to ensure that consumers are not confused about source. *Id.* at 155, 157. That confusion "is most likely to arise when someone uses another's trademark as a trademark—meaning again, as a source identifier—rather than for some other expressive function." *Id.* at 157. In the Supreme Court's view, when "a mark is used as a mark," the traditional likelihood-of-confusion test "does enough work to account for the interest in free expression." *Id.* at 159.

From these principles, the Supreme Court had little difficulty concluding that *Rogers* should not apply to the Bad Spaniels dog toy. VIP Products had conceded that it used the Bad Spaniels trademark as a source identifier. *Id.* at 160. And that was how VIP Products used the mark in operation. *Id.* Thus, there could be "no threshold test working to kick out" the claims of Jack Daniel's, and "the only question in

this suit going forward is whether the Bad Spaniels marks are likely to cause confusion." *Id.* at 161. The Supreme Court remanded the case for further development on this point.

Of note, however, the Supreme Court recognized that the Bad Spaniels expressive message could still be relevant to the likelihood-of-confusion analysis. The Court specifically flagged that "a trademark's expressive message— particularly a parodic one, as VIP asserts—may properly figure in assessing the likelihood of confusion." *Id.* Indeed, the Court reasoned, "although VIP's effort to ridicule Jack Daniel's does not justify use of the *Rogers* test, it may make a difference in the standard trademark analysis." *Id.* These observations were consistent with the Supreme Court's acknowledgment that in some instances, a plaintiff may fail to plausibly allege likelihood of confusion at the Rule 12(b)(6) stage. *Id.* at 157 n.2.

It is clear from the foregoing discussion that *Jack Daniel's* altered the law that governed us when we decided *Punchbowl I.* To the point that our precedents previously held that *Rogers* applies when an expressive mark is used as a mark—and that the only threshold for applying *Rogers* was an attempt to apply the Lanham Act to something expressive—the Supreme Court has now made clear that this is incorrect. In that specific respect, our prior precedents are no longer good law. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), *overruled on other grounds by Sanchez v. Mayorkas*, 141 S.Ct. 1809 (2021) (holding that a three-judge panel does not follow circuit precedent when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority"). At the same time, however, because the Supreme Court's decision in *Jack Daniel's* was

confined to a "narrow" point of law, 599 U.S. at 163, that *Rogers* does not apply when a mark is used as a mark, preexisting Ninth Circuit precedent adopting and applying *Rogers* otherwise remains intact and binding on three-judge panels. *Cf. id.* at 165 (Gorsuch, J., concurring) ("[W]e necessarily leave much about *Rogers* unaddressed.").

### C

We now re-examine this case under *Jack Daniel's* and hold that *Rogers* does not apply. The reason is straightforward: AJ Press is using the Mark to "designate the source of its own goods—in other words, has used a trademark as a trademark." *Jack Daniel's*, 599 U.S. at 145. The Mark is used to "identify and distinguish" AJ Press's news products. *Id.* at 160 (citations and quotation marks omitted). Indeed, AJ Press has filed trademark applications to register the marks "Punchbowl News" and "Punchbowl Press." Under the clear holding of *Jack Daniel's*, *Rogers* does not apply to the use of a mark as a mark (the addition of the more generic terms "News" and "Press" does not take away from AJ Press's use of "Punchbowl" in its mark, as a mark). It is true that as used by AJ Press, the Punchbowl Mark has expressive qualities. But that was true in *Jack Daniel's* as well. It did not change matters there, and it cannot do so here. *See id.* at 157 ("Nor does th[e] result change because the use of a mark has other expressive content—*i.e.*, because it conveys some message on top of its source.").

AJ Press nonetheless contends that we should read *Jack Daniel's* more narrowly, so that *Rogers* should still apply here. AJ Press notes that, in *Jack Daniel's*, it was undisputed that the defendant's Bad Spaniels mark was a deliberate variation of the Jack Daniel's mark. Here, AJ Press

emphasizes, it is not using the Punchbowl Mark to parody or refer to Punchbowl, Inc., the greeting card company. In AJ Press's view, when two companies in different markets use the same common English word to identify their brand, the *Rogers* test still applies.

We cannot accept this argument given the Supreme Court's reasoning in *Jack Daniel's*. The Court was unequivocal in holding that "*Rogers* does not apply when the challenged use of the mark is as a mark." 599 U.S. at 163. *Jack Daniel's* was not limited to direct references or parodies. Quite the opposite: the Supreme Court held that *Rogers* did not apply *notwithstanding* the parodic use of the mark, and notwithstanding that the Bad Spaniels toy explicitly disclaimed any affiliation with Jack Daniel's the whiskey company. *Id.* at 150, 161. The fact that the Punchbowl Mark involves a common English word does not exempt AJ Press from the rule that "*Rogers* does not apply when the challenged use of the mark is as a mark." *Id.* at 163. We have no basis to carve out exceptions for the use of common words in trademarks when the Supreme Court created no exception for parodies. Nor, as a general matter, do we apply a different analysis simply because AJ Press is a media company. As in *Jack Daniel's*, AJ Press must thus "meet [the] infringement claim on the usual battleground of 'likelihood of confusion.'" *Id.* at 156 (citation omitted).

To be clear, however, the expressive nature of AJ Press's use of the Punchbowl Mark and the fact that "punchbowl" is a common word will certainly be relevant in the likelihood-of-confusion analysis. As we noted above, the Supreme Court made the same point in *Jack Daniel's* in the context of parodies. *See id.* at 161. A similar point holds true here. When companies operating in different spaces use the same common words as trademarks with different expressive

connotations, it reduces the likelihood of confusion. *Cf. id.* ("[A] parody is not often likely to create confusion."). And although AJ Press emphasizes that it uses "Punchbowl" in connection with "Punchbowl *News*" and "Punchbowl *Press*," this likewise does not show that *Rogers* applies, even though it will be a relevant consideration in assessing the likelihood of confusion.[1]

On remand, the district court should proceed to a likelihood-of-confusion analysis. The court may, in its sound discretion, consider whether this analysis can be conducted on the present record. *See Jack Daniel's*, 599 U.S. at 157 n.2 (noting that not "every infringement case involving a source-identifying use requires full-scale litigation" and that some cases can be resolved at the Rule 12(b)(6) stage).

The parties shall bear their own costs on appeal.

**REVERSED AND REMANDED.**

---

[1] In *Jack Daniel's*, the Supreme Court allowed that there might "potentially" be "rare situations" in which, although a mark is used as a mark, the likelihood-of-confusion test does not sufficiently protect First Amendment interests. 599 U.S. at 159. AJ Press does not argue that it meets any such "rare" exception.